W. S. SIMPSON, Appellant, v. KANE & JAMISON.

**Reformation.** Where a contract for the exchange of a farm for a stock of goods at invoice value, provided for invoice "at wholesale cost as shown by cost marks on said goods;" the owner of the farm was not entitled to have it reformed so as to require the invoice to be at wholesale cost without reference to the marked price, where there was a preponderance of evidence that the parties intended that the value of the goods was to be determined by the cost marks.

CONSTRUCTION. Such a contract does not mean that the goods are to be valued at actual wholesale cost, without reference to the cost marked upon them.

**Deceit: EVIDENCE.** Where a farm was exchanged for a stock of goods, to be invoiced "at wholesale cost as shown by cost marks on said goods," the fact that the cost marks were higher than the wholesale price actually paid, did not render the owner of the goods liable for deceit, where it appeared that the owner of the farm had placed an excessive valuation on his farm for the exchange, that the marks were placed on the goods before the parties met, and that the owner of the farm had knowledge of this fact when he closed the contract.

*Appeal from Fayette District Court.*—HON L. E. FELLOWS, Judge.

SATURDAY, MAY 16, 1896.

THIS is a suit in equity to reform a written contract, and to recover thereon for fraud and deceit on the part of the defendants, whereby the plaintiff suffered damages. There was a full trial on the merits of the case, and a decree was entered dismissing the petition. The plaintiff appeals.—*Affirmed.*

*Guernsey & Baily* and *D. W. Clements & Son* for appellant.

*Ainsworth & Ainsworth, Hoyt & Hancock,* and *G. H. Phillips* for appellees..

ROTHROCK, C. J.—The case is here for trial anew, and must be determined by a preponderance of the evidence. The testimony of the witnesses appears to be fairly and fully presented in appellant's abstract, with slight amendments, made by a brief abstract, prepared in behalf of appellees. There is not a disputed proposition of law presented by the pleadings or arguments. The counsel for appellant truthfully say, in their opening argument, that "the questions presented on this appeal, are pre-eminently questions of fact." The controversy originated in the exchange of a farm for a stock of goods, such as is usually found in what is known as a "general store." The plaintiff is a physician, and at the time of the trade resided at Grinnell, in this state. He owned a farm of three hundred and twenty acres, near Sibley, in Osceola county. The defendants were the owners of a stock of goods, which they were retailing at Oelwein, in Fayette county. The goods were clear of incumbrance. The farm was mortgaged to secure the payment of three thousand dollars. The parties put their respective property in the hands of one C. W. Terrell, a real estate agent at Des Moines. Terrell advertised the land as being under his charge for exchange for a stock of goods. This led to such preliminary negotiations that on the thirteenth day of March, 1893, the plaintiff and Terrell went to Oelwein, and met the defendants, and before the close of the day a written contract was entered into by which it was agreed that the plaintiff should convey his farm to the defendants and take the stock of goods in

exchange therefor. The defendants were to assume and discharge the mortgage on the land. An invoice of the goods was to be taken, and, when completed, the deed for the land was to be delivered, and the plaintiff was to take possession of the goods. The farm was to be estimated in the trade as being worth ten thousand dollars. After deducting the three thousand dollar mortgage, the estimated value to the defendants would be seven thousand dollars. It was understood that the goods would invoice more than that amount, and the contract provided that, if such should be the case, the plaintiff would execute bankable notes for the difference, payable six months from date. After the goods were invoiced, the parties met at Oelwein to close up the trade, and the invoice of the goods amounted to more than fourteen thousand dollars. The plaintiff was surprised at this, as it was greatly in excess of what he supposed to be the value of the goods. He refused to close the contract, but after some dispute and contention between him and the defendants, which resulted in reducing the price of the goods several hundred dollars, and fixing the aggregate value in the trade at fourteen thousand dollars, he delivered the deed to the farm, and made a note for seven thousand dollars, and took possession of the stock of goods. So far as the face of the transaction was concerned, this closed the exchange of the property. The note for the seven thousand dollars was made to a bank at Oelwein, and as we understand the record, it was made payable to the order of the bank. The plaintiff kept the stock of goods at Oelwein for a time, and sold what he could, and removed the remainder to the city of Grinnell, where they were finally disposed of at a loss of some seven thousand dollars, according to the prices placed on the land and goods by the parties to the trade. This action was brought about six months after the exchange was

made. It is not necessary to set out the contract in full. We have stated its general provisions.

One point in controversy is whether the writing expressed the intention of the parties as to the manner in which the price of the goods should be fixed by the invoice. The part of the contract relating thereto is as follows: "Said merchandise to be invoiced at the wholesale cost, as shown by cost marks on said goods, for all goods not damaged or shop-worn. If any damaged goods, to be invoiced at present cash value." The plaintiff sought to have the contract reformed so that the value should be the wholesale cost without reference to the price marked on the goods. It will be understood that we do not determine disputed facts by a review of the testimony of the witnesses in an opinion. After carefully examining the evidence, we only announce such ultimate facts as we find are established by a preponderance of the evidence. We find that the plaintiff has not produced sufficient evidence to reform the contract. On the contrary, it appears to us that no mistake was made in the writing. There is a very decided preponderance of evidence to the effect that the contract was made just as the parties intended it should be written. There was a dispute about it at the time it was prepared and signed, and there is no reason for finding that there was a mistake on the part of either of the parties, and much less cause for holding that there was a mutual mistake.

II. It is said, however, that a fair construction of the contract authorizes the conclusion that the goods were to be invoiced at wholesale cost, without regard to the cost marks on the goods. We do not concur in this proposition. The cost marks on the goods are named as the method of ascertaining the price at which the stock was to be estimated in the trade, and we think a fair preponderance

of the evidence shows that this was so understood by the parties.

III.   It is contended that the defendants practiced a great fraud on the plaintiff, by marking the goods at nearly double the wholesale cost.   If this proposition was established by the evidence,—that is, if it were shown that these goods were marked as they were, for the purpose of effecting this trade, and the plaintiff was imposed upon in that way, and closed up the trade, without knowledge of the fraud,—there would be ground for holding defendants liable in damages.   But our conclusion on this question is, that in this exchange of property it is manifest, that trading prices were put on the farm and on the goods.   The farm was not worth ten thousand dollars.   The evidence as to its value, is not very well established.   We think it safe to say, that it was not worth more than seven thousand dollars, if sold for cash, or on the usual payments for such property. The stock of goods was mostly made up of two old stores, at Tipton, in this state, and an old stock imported from the state of Illinois.   The defendants had exchanged land for the goods, and after receiving them, they placed cost marks on them, at much more than they were worth.   They did this before they knew that the plaintiff was seeking to exchange his farms for goods.   There was no specific intent to defraud the plaintiff.   This may not have been necessary to constitute fraud, but we find that the plaintiff knew when he closed the contract and took possession of the goods, that they were marked at a higher price than was originally paid for them when bought from wholesale merchants.   He had men representing him in making the invoice.   With this knowledge, and with the facts established by the express provisions of the contract, that the cost mark on the goods should control, while it is apparent that the defendants'

goods were inflated in value more than the plaintiff's farm, yet we can discover no legal ground upon which to find a judgment for damages. The judgment of the district court is AFFIRMED.